IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

K.I.D., *et al.*,

        Plaintiffs,

v.                                    Civil Case No. 3:14cv177-JAG

JONES, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's Motion to Dismiss. The plaintiffs[1] assert five claims[2] against the defendant, Northampton County Sheriff Charles Wilkins, related to sexual abuse committed by Northampton County Deputy Sheriff Derek Jones. First, the plaintiffs claim that Sheriff Wilkins is strictly liable for the torts of his deputy; this claim fails because Deputy Jones was not acting *colore officii* when he sexually assaulted K.I.D. The plaintiffs' second, third, and fourth theories accuse Sheriff Wilkins of gross negligence in the training, retention, and supervision of Deputy Jones. The plaintiffs' negligent training and retention claims fail because they have offered no supporting allegations. The allegations regarding supervision show that Sheriff Wilkins actually exercised some care in dealing with

---

[1] The plaintiffs are K.I.D. and her parents. Given the sensitive nature of this case and its potential to embarrass K.I.D., the Court has allowed her to proceed anonymously, using only her initials. (Dk. No. 23.)

[2] The plaintiffs initially filed three separate complaints, the shortest of which went on for 477 paragraphs over 104 pages. The Court consolidated the cases, and directed the plaintiffs to file an amended complaint that complied with Fed. R. Civ. P. 8(a). The amended complaint runs for 220 paragraphs over twenty five pages. The plaintiffs' have failed to number any of their claims, and their precise theories and claims are buried throughout this tome. As such, the Court will refer to their claims by the numbers used in the original complaint. The claims at issue at this time are Counts VI-VIII.

Deputy Jones, which rules out this claim. Finally, the plaintiffs claim that Sheriff Wilkins was negligent *per se*, but the statutes on which they rely do not impose a duty on Sheriff Wilkins, nor do the plaintiffs meet any of the other requirements for negligence *per se*. The Court therefore GRANTS the defendant's motion and dismisses the plaintiffs' case.

## I. Facts and Proceedings[3]

This case stems from sexual abuse committed by Deputy Jones, an appointee of Sheriff Wilkins, while he served as a School Resource Officer ("SRO") at Northampton High School ("NHS.") During his time as a SRO, Deputy Jones sexually abused K.I.D. over a nearly yearlong period—K.I.D.'s freshman and sophomore years.

According to the amended complaint, Deputy Jones wore several hats at NHS. Cite. In addition to working as a SRO, the plaintiffs contend that the Northampton School Board employed Deputy Jones as a coach of two NHS athletic teams and utilized him as an unpaid guidance counselor. (Dk. No. 20 at ¶¶ 20-21.) Deputy Jones worked out of a private, glass-enclosed office at the high school. (Dk. No. 20 at ¶¶ 32, 39.) To enhance his privacy, Deputy Jones had a mural painted over the windows. (Dk. No. 1, Ex. 5 at ¶ 121.) Deputy Jones would also regularly lock the door and close the blinds when he had students in his office, violating several Northampton school policies designed to protect female students from male faculty. (Dk. No. 20 at ¶ 64.)

Most of the sexual contact between Deputy Jones and K.I.D. occurred in Deputy Jones' office at NHS or in various rooms around the NHS campus. On at least one occasion, however, Deputy Jones took K.I.D. in his Sheriff's Department vehicle to a secluded location off-campus

---

[3] The Court assumes the plaintiffs' well-pleaded allegations are true, and views the facts in the light most favorable to them. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004).

2

to have sexual intercourse, violating several Sheriff's Department policies regarding the use of department vehicles in the process. (Dk. No. 20 at ¶ 36.) Deputy Jones also used a Sheriff's Department-issued cell phone to exchange hundreds of text messages with K.I.D. (Dk. No. 1, Ex. 5 at ¶¶ 56, 63-64.) These texts contained not only open discussions of their sexual activities, but also suggestions on how to keep the relationship secret. (Dk. No. 1, Ex. 5 at ¶ 274.)

At some undisclosed time during the year prior to Deputy Jones' abuse of K.I.D., several teachers complained to NHS principal, David Dixon, about Deputy Jones' interactions with female students. (Dk. No 20 at ¶ 31.) They specifically complained about Deputy Jones' tendency to violate NHS' open-door policies. In response, Dixon spoke with Deputy Jones on several occasions about complying with NHS' open door policies. (Dk. No. at ¶¶ 127-29.) Dixon also told Sheriff Wilkins that Deputy Jones had violated the open door policies. (Dk. No. 20 at ¶ 132.) Sheriff Wilkins thereupon had a separate conversation with Deputy Jones, admonishing him for his failure to comply with the school's policy. (Dk. No. 20 at ¶ 132.)

Eventually, several NHS students reported that Deputy Jones allowed K.I.D. to share his hotel room during a school trip. (Dk. No. 1, Ex. 5 at ¶ 165.) This led to an investigation by Child Protective Services, followed by criminal charges, and the end of Deputy Jones' tenure as a deputy sheriff. (Dk. No. 1, Ex. 5 at ¶ 50.) Deputy Jones eventually pled guilty to sexually abusing K.I.D. (Dk. No. 20 at ¶ 90.)

Following the conclusion of the criminal case against Deputy Jones, the plaintiffs instituted this suit in the Richmond County Circuit Court. The defendants removed the case to this Court. The plaintiffs have since dropped their claims against all of the defendants except Sheriff Wilkins.

## II. Discussion[4]

### A. Strict Liability

Under Virginia law, a sheriff is strictly liable for all the actions of his deputy performed *colore officii*, or under color of office. *Westmoreland v. Brown*, 883 F.Supp. 67, 79 (E.D. Va. 1995) (citing *Mosby's Adm'r v. Mosby's Adm'r*, 50 Va. 584, 603 (1853)). The plaintiffs argue that Deputy Jones acted under *colore officii* when he sexually abused K.I.D., and that Sheriff Wilkins should therefore bear liability for Deputy Jones' torts. They argue that "the acts and defaults of the deputy, *colore officii*, are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself." (Pls.' Brief in Opp. to Mot. Dismiss, Dk. No. 30 at 4.) (internal citations and quotation marks omitted).

To establish that Deputy Jones acted *colore officii*, the plaintiffs must show that he acted under the pretense of lawful authority. *Westmoreland*, 883 F.Supp. at 79. In other words, "the deputy must have acted under color of office, e.g. a deputy acting as a deputy, under the pretense of lawful authority." *Id.* at 79–80. The mere fact that a deputy acts illegally while on duty will not suffice. For instance, the sheriff would not be liable if Deputy Jones had robbed a bank while serving process, or if he went home while on patrol and killed his spouse. Those criminal

---

[4] A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 254–55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). Although the Court must accept as true all well-pleaded factual allegations, this does not hold true for legal conclusions or conclusory factual allegations. *Iqbal*, 556 U.S. at 678.

actions would not qualify as *colore officii*. Deputy Jones must have committed the criminal act in a form that purports to stem from his legal authority as a deputy sheriff. *Id.* at 79 (finding that a deputy acting *colore officii* "act[s] under the *purported and apparent authority of his office*") (italics in original).

In *Westmoreland*, a deputy sheriff working in a jail "asked" some prisoners to beat up an inmate suspected of burglarizing the deputy's house. 883 F.Supp. at 79. The plaintiff argued that, because he had committed the tort while on the job, the deputy had acted *colore officii*. *Id.* at 79–80. This Court, however, held that no one could possibly think that the deputy performed his tortious actions under the pretense of lawful authority, and absolved the defendant sheriff of liability for the deputy's conduct. *Id.* To hold otherwise "would make sheriffs strictly liable for any misconduct of a deputy that occurred within the four walls of the jail." *Id.* at 80. The plaintiffs, however, urge that exact result here.[5]

From the amended complaint, it is clear that Deputy Jones did not act under *colore officii*. The plaintiffs themselves claim that Deputy Jones held four separate positions: SRO, guidance counselor, head girls' junior varsity softball coach, and assistant boys' wrestling coach. (Dk. No. 20 at ¶¶ 20-21.) Only as a SRO did Deputy Jones work for Sheriff Wilkins. The Northampton School Board hired him to serve in the latter two positions and relied upon him to unofficially act as a guidance counselor. (Dk. No. 20 at ¶ 21.) His contact with K.I.D. occurred while he served in these school positions, in addition to being on duty as a SRO. Additionally, in their original complaint, the plaintiffs allege that Deputy Jones used his cruiser "as a school vehicle"

---

[5] The plaintiffs rely on *Oakes v. Patterson*, No. 7:13-cv-552, 2014 WL 1569427 (W.D. Va. April 17, 2014) to support their position. In *Oakes*, a deputy sheriff sexually assaulted an inmate. *Id.* at *1. The Court held that Sheriff Wilkins could be found liable under a common law *respondeat superior* theory. *Id.* at *7. *Oakes*, though, specifically held that the Deputy Jones did not act *colore officii*. *Id.*

5

when he took K.I.D. off-campus. (Dk. No. 20 at ¶ 40.) Much of the sexual abuse also occurred after Deputy Jones pulled K.I.D. out of class under the guise of counseling her. None of these actions occurred *colore officii* as a deputy sheriff.

The original complaint and the amended complaint show that the plaintiffs want to hold Sheriff Wilkins liable simply because Deputy Jones was on duty when he committed the torts. *Westmoreland* forbids this result. Cite. The Court will therefore dismiss the plaintiffs' *colore officii* claim.

### B. Retention, Training, and Supervision

The plaintiffs next contend that Sheriff Wilkins was grossly negligent in retaining, training, and supervising Deputy Jones. The pleadings do not contain any factual allegations dealing with Deputy Jones' retention or training. The plaintiffs have simply made naked conclusions that Sheriff Wilkins violated some unarticulated standard of care regarding Deputy Jones' retention and training. This does not state a plausible claim for relief. The Court dismisses the plaintiffs' training and retention claims. Turning to the plaintiffs' supervision claim, Virginia defines gross negligence as a "degree of negligence which shows such indifference to others as constitutes an utter disregard of prudence amounting to the complete neglect of the safety" of another. *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (Va. 1971). The difference between gross and ordinary negligence is simply a matter of degree. *Green v. Ingram*, 269 Va. 281, 292, 608 S.E.2d 917, 923 (Va. 2005). Gross negligence constitutes negligence that would shock fair-minded people, although it need not constitute willful recklessness. *Koffman v. Garnett*, 265 Va. 12, 15, 574 S.E.2d, 258, 260 (Va. 2003). Furthermore, "[d]eliberate conduct is important evidence on the question of gross negligence." *Chapman v. City of Va. Beach*, 252 Va. 186, 190, 475 S.E.2d 798, 801 (Va. 1996). This Court

has held that "a claim of gross negligence fails as a matter of law where there is no deliberate conduct by the defendant." *Reid v. Newton*, No. 3:13 CV-572, 2014 WL 1493569, at *8 (E.D. Va. April 14, 2014) (citing *City of Lynchburg v. Brown*, 270 Va. 166, 170-71, 613 S.E.2d 407, 410 (Va. 2005).

The plaintiffs do not claim that Sheriff Wilkins had any actual knowledge of Deputy Jones' sexual abuse, nor do they claim that he took any deliberate action that aided or encouraged Deputy Jones' crimes. Instead, they take the opposite tack, arguing that Sheriff Wilkins failed to take any action to protect K.I.D. The plaintiffs claim that Sheriff Wilkins was grossly negligent for doing nothing after learning about Deputy Jones' propensity to have female students in his NHS office with the blinds drawn and the door closed, and in further failing to check the text messages Deputy Jones sent to K.I.D. on his department-issued cell phone. (Dk. No. 20 at ¶¶ 104-05, 132.) Contrary to these assertions, the plaintiffs' pleadings show the exact opposite.

After learning of Deputy Jones' failure to comply with NHS' open-door policy, Sheriff Wilkins immediately spoke with Deputy Jones, telling him that he needed to follow the policy, which governs interactions between female students and male employees. (Dk. No. 20 at ¶ 132.) While one could argue about whether Sheriff Wilkins could have or should have done more to supervise Deputy Jones, his failure to take further action does not constitute gross negligence. Nor could any reasonable person's conscience be shocked by the fact that Sheriff Wilkins does not routinely monitor his employees' cell phone usage. Cite. Today, many people—if not most—make and receive hundreds of cell phone text messages each month. Cite. No case suggests that Sheriff Wilkins had some duty to regularly inspect an employee's cell phone activity.

In short, Sheriff Wilkins did not show complete neglect of K.I.D.'s safety. The plaintiffs' gross negligence claim, therefore, fail as a matter of law. The Court dismisses their claim.

### C. Negligence Per-Se

Finally, the plaintiffs attempt to accuse Sheriff Wilkins of negligence *per se*. To establish negligence *per se*, they must show that: (1) the defendant violated a statute enacted for public safety; (2) the plaintiff belongs to the class of persons for whose benefit the statute was enacted; (3) the harm that occurred was of the type against which the statute was designed to protect; and (4) the statutory violation is the proximate cause of the plaintiff's injury. *Kaltman v. All American Pest Control, Inc.*, 281 Va. 483, 496, 706 S.E.2d 864, 872 (Va. 2011). A negligence *per se* claim "represents the adoption of the requirements of a legislative enactment as the standard of conduct of a reasonable person." *Id.* (quoting *Butler v. Frieden*, 208 Va. 352, 353, 158 S.E.2d 121, 122 (Va. 1967)) (internal quotations omitted).

The plaintiffs claim that violations of the Virginia Code constitute negligence *per se*. Va. Code Ann. §§ 9.1-101, 9.1-110(a). While § 9.1-101 is simply a definitional section, section 9.1-110 establishes a fund for a "School Resource Officer Grants Program" and describes the criteria for disbursing such funds. *Id.* Given their functions—establishing a fund and stating legislative definitions—it is hard to see how the plaintiffs could possibly satisfy any of the negligence *per se* requirements. For instance, how could anyone violate either statute? Alternatively, how can disregard of a funding statute proximately cause injury to K.I.D. and her parents? The plaintiffs offer nothing more than legal conclusions, and their claim fails.[6]

---

[6] The plaintiffs also claim that Sheriff Wilkins somehow personally violated statutes forbidding sexual contact between adults and minors. The pleadings contain no allegations showing how Sheriff Wilkins violated these laws. The negligence *per se* theory might provide a way to recover against Deputy Jones, but not against Sheriff Wilkins.

## IV. Conclusion

The Court GRANTS the defendant's motion to dismiss.

It is so ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

Date: July 18, 2014
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge